STATE, Respondent, vs. MARTIN and others, Appellants.

*October 14, 1938—January 10, 1939.*

*A. W. Richter* of Milwaukee, for the appellants.

For the respondent there were briefs by the *Attorney General, Scott K. Lowry,* district attorney of Waukesha county, and *Roland J. Steinle,* assistant district attorney, and oral argument by *Mr. Steinle* and *Mr. H. H. Persons,* assistant attorney general.

The following opinion was filed November 9, 1938:

FRITZ, J. The appellants' first assignment of error is that the court erred in overruling their motion to dismiss the

indictment. In support of that assignment the appellants contend that no criminal offense is charged and there can be no conviction under sec. 348.40, Stats. (see margin [1]), which provides for the punishment of persons guilty of a conspiracy at common law, unless it is alleged and proven that to effect the object of the conspiracy some act was done by the conspirators which constituted and was known as an offense at common law. In that connection the appellants argued that the offense of setting up and maintaining gambling devices, which is defined and made punishable by sec. 348.07, Stats., did not constitute and was not known as a criminal offense under the common law; and therefore the statutory offense under that section by setting up and maintaining such devices cannot constitute the essential element, *i. e.*, the act which must be charged and proven to have been done by one or more of the conspirators to effect the object of the conspiracy in order to render them guilty under sec. 348.40, Stats. No case directly in point is cited in support of the appellants' contention. Likewise no case passing upon that contention is cited to the contrary. In *Chamberlain v. State*, 208 Wis. 264, 242 N. W. 492, a conviction of defendants, who were not public officers, was sustained for their conspiracy to extort money by blackmail, although the common-law offense of extortion seems to have been confined to cases where the extortion was committed by a public officer under color of his office, and did not extend to commission of the act by a private party (8 R. C. L. p. 293, § 315). But the point now under consideration was not raised in that action. However, in *Commonwealth v. Hunt*, 4 Metc.

---

[1] Sec. 348.40 *Common-law conspiracy.* Any person guilty of a criminal conspiracy at common law shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars; but no agreement, except to commit a felony upon the person of another or to commit arson or burglary, shall be deemed a conspiracy or be punished as such unless some act, beside such agreement, be done to effect the object thereof by one or more of the parties to such agreement.

(Mass.) 111, 123, there is a statement bearing on that point in an opinion referred to with approval in *State v. Crowley*, 41 Wis. 271. In the Massachusetts case the defendants were charged with having organized and conspired for the purpose of having the members of their organization refuse to work for an employer who would not agree to employ their members only, to the exclusion of all others. That was not an unlawful purpose under the law of Massachusetts, but was unlawful in England and there a conspiracy for that purpose was punishable as a criminal conspiracy at common law. In a prosecution in Massachusetts for a conspiracy at common law to effect that purpose, it was contended that whether the prosecution would lie depended upon whether the purpose to be accomplished was unlawful under the laws of that state, and that it did not suffice that it was unlawful under the law of England. In sustaining that contention the court said (p. 121):

"Although the common law in regard to conspiracy in this commonwealth is in force, yet it will not necessarily follow that every indictment at common law for this offense is a precedent for a similar indictment in this state. The general rule of the common law is, that it is a criminal and indictable offense, for two or more to confederate and combine together, by concerted means, to do that which is unlawful or criminal, to the injury of the public, or portions or classes of the community, or even to the rights of an individual. This rule of law may be equally in force as a rule of the common law, in England and in this commonwealth; and *yet it may depend upon the local laws of each country to determine, whether the purpose to be accomplished by the combination, or the concerted means of accomplishing it, be unlawful or criminal in the respective countries. . . .* This consideration will do something towards reconciling the English and American cases, and may indicate how far the principles of the English cases will apply in this commonwealth, and show why a conviction in England, in many cases, would not be a precedent for a like conviction here."

In accordance with those statements it is our conclusion that, in order to sustain an indictment or conviction in this state, it is not necessary that the act or offense, which was the object of, or the means of effecting the conspiracy, and which is unlawful or criminal under our laws, was also unlawful or criminal at common law. In other words, in the respect under consideration it suffices to sustain the indictment herein as charging an offense in violation of sec. 348.40, Stats., that the acts charged to have been done to effect the object of the conspiracy constituted an unlawful offense under the statutes of this state. Consequently, the court did not err in overruling the appellants' motion to dismiss the indictment.

On behalf of five of the appellants, Martin, Buckeye, Woodruff, Nowatske, and Voss, it is contended that their conviction cannot be sustained because the prosecution of them under the indictment for conspiracy placed them in double jeopardy for the reason that each of them had theretofore been tried and convicted in other actions for violations of sec. 348.07, Stats., by setting up and maintaining slot machines at the same times and places as the times and places at which each was charged and proven in this action to have set up and maintained such machines in violation of that statute. In explanation of this contention the following facts must be noted. Each of those appellants had been tried and convicted, under an indictment returned solely against him, charging that he had unlawfully set up and maintained slot machines for gambling purposes in certain specified months in 1937 at taverns conducted by certain proprietors at specified locations in Waukesha county; and in addition Martin was charged in the indictment against him with having kept and maintained such machines on specified dates in each of the five months from July to November, 1937, at a tavern of which Ben Minten was the proprietor. On the

other hand, the indictment and proof in the case at bar are broader in scope in that it was charged and proven that all of the defendants herein, in violation of sec. 348.40, Stats., continued to conspire and concert together between July 1, 1937, and May 6, 1938, for the purpose of the illegal setting up, keeping, and maintaining by each of them, with the exception of Herman Salen and Walter A. Liskowitz, of slot machines used as gambling devices in violation of sec. 348.07, Stats., in the premises of twenty-five named proprietors of taverns located at specified places in Waukesha county; and that to carry out and effect the object of that conspiracy the defendants committed various overt acts, consisting in part of the following. They, with the exception of Liskowitz, held several meetings for the discussion and the effecting of the organization of an association by the defendants (excepting Liskowitz and Salen) for the purpose of protecting the interests of the association's members in the operation of slot machines set up and maintained by them, individually, for gambling purposes in the premises of the twenty-five named proprietors and at other premises; and to effect that purpose they engaged the defendant Salen to attend their meetings and to prepare articles of association, which they adopted and pursuant to which each paid an initiation fee of $50 and monthly assessments of $2 for each gaming machine maintained by him in the premises of the named proprietors to provide funds to secure protection of their illegal interests, and to pay fines imposed for their illegal use of the machines and to reimburse members for the loss of machines by confiscation. The association provided printed labels to all the members to identify their machines, and each of them placed the labels on the machines which he maintained on the specified premises in Waukesha county so as to have them protected as the machines of the members by Liskowitz, who was the sheriff of the county, and who

was to refrain from arresting or directing the arrest of the proprietors on whose premises the defendants maintained the machines, and also to protect those persons by other means. Pursuant to the conspiracy each of the members, including the appellants, individually maintained slot machines at dates specified in the indictment and the proof upon the premises of named proprietors and gave the latter "tip-off" information as to when to leave the machines for operation on such premises, and when to move them out of sight in order to avoid confiscation or arrests for the keeping thereof. It is true that some of the places and times at which the five appellants, who contend that they were placed in double jeopardy in violation of the constitution, were charged and proven herein to have maintained the machines are the same as the times and places at which they were charged and proven to have, individually, kept machines, for the keeping of which each was convicted in another action brought solely against him, but those times and places are not in all instances identical as to any of the appellants with all of the times and places at which each was charged and proven herein to have illegally maintained the machines. Thus, in addition to the times and places at which each of the appellants was charged and proven to have set up and maintained the machines in the action against him alone in which they were first convicted, each was charged and proven to have maintained machines pursuant to and under their conspiracy at the following times and taverns, to wit: Martin at Klink's on September 11, 1937, and at Minten's on August 6, September 11, and October 8, 1937; Buckeye at Saeger's on September 11 and October 8, 1937, and at Hammer's on October 8, 1937; Voss at Hartert's on September 11 and October 8, 1937, and at Fritsch's on October 8, 1937; Woodruff at Motz's on October 8, 1937; and Nowat-

ske at Benke's on August 6, September 11, and October 8, 1937. Consequently, in this action, as compared to the action in which each appellant was the sole defendant, there was proof that, in addition to the times and places at which each of the appellants had set up and maintained machines for which each had been convicted on a prior trial, each of the appellants had unlawfully maintained such machines at the places named at certain additional times; and furthermore there was proof establishing the commission of numerous overt acts by the defendants acting in concert and collectively, by which they effected their agreement and organization as conspirators, and that, under and pursuant to that conspiracy, each of the appellants was interested and participated in aiding in the maintenance and protection of the slot machines of every conspirator at all of the times and places at which each maintained a machine at the places specified, and in also having each of them reimbursed for any loss incurred by him by the confiscation of any machine, or the payment of any fine for the illegal keeping thereof, out of the fund accumulated by their payment of the initiation fees and monthly dues as stated above. Because of their unlawful overt acts in those respects, the participation and offense of each conspirator were not confined to only the particular machines as to which he had been convicted on a former trial; and the mere setting up and maintenance of the machines by each for which each was convicted on that trial constituted a separate and distinct offense under sec. 348.07, Stats., from the criminal conspiracy in violation of sec. 348.40, Stats., between all of the other conspirators for the purpose of aiding and illegally protecting by their combined action and contributions in the maintenance of all slot machines set up and kept by any of the conspirators upon the named premises as stated above.

To establish the conspiracy charge so much proof was required and introduced herein, in addition to that necessary to sustain the former convictions under sec. 348.07, Stats., that there is applicable the rule stated in *Morey v. Commonwealth*, 108 Mass. 434,—

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

That rule was approved and applied in *State v. Brooks,* 215 Wis. 134, 254 N. W. 374; *Eastway v. State,* 189 Wis. 56, 206 N. W. 879; *Schroeder v. State,* 222 Wis. 251, 267 N. W. 899; and in the following cases it was applied in criminal actions for conspiracy in which a former conviction or acquittal in a prosecution for either burglary or larceny was held not to bar the subsequent action for a conspiracy with others to commit the burglary or larceny. *Whitford v. State,* 24 Tex. App. 489, 492, 6 S. W. 537; *State v. Sias,* 17 N. H. 558; *Davis v. People,* 22 Colo. 1, 43 Pac. 122.

The appellants further contend that the evidence did not establish the conspiracy because the court by discharging the defendants Liskowitz and Salen,—who were, respectively, the sheriff of Waukesha county, and the attorney retained by the conspirators to attend their meetings, prepare their articles of organization, and defend prosecutions for the keeping of their gambling machines and the confiscation thereof,—eliminated from the case the evidence as to the

following overt acts, to wit: That the defendants engaged Salen to take care of the association and protect the illegal interests of the defendants, and that he paid the fine of Skomeczny as a keeper of a machine; that labels were placed on the machines which were to be protected by the sheriff; that some of the defendants visited with the sheriff; that he refrained from arresting and directing the arrest of keepers of the machines, and advised them when to put the machines out of sight and operation; and that he refused to permit a deputy to seize two machines on Skomeczny's premises. In that connection it is argued on behalf of the appellants that the testimony as to the maintaining of slot machines by the appellants at the named places also establishes that they were kept there in virtually the same manner as prior to July 1, 1937, the date charged as the beginning of the alleged conspiracy; that consequently there was no change in the defendants' placing or operating of the machines by reason of the conspiracy; that the evidence failed to prove that the association was formed to corrupt public officers and protect the machines and the operators as to arrests, and it is clear therefrom that the association was not formed for the purpose of maintaining or operating slot machines, but was in itself entirely innocent and legal as appears from its articles of association. A review of the record discloses that although Liskowitz and Salen were discharged as not criminally liable, it does not necessarily follow that all of the proof establishing the overt acts necessary to sustain a conviction of the appellants was thereby eliminated from the case, or that the association was but innocent and legal and not formed for illegal purposes, and that after the beginning of the conspiracy the machines were maintained by the defendants in the same manner without any change in the operation thereof by reason of the conspiracy. Notwithstanding the appellants' contentions in those respects, the

record well warranted the following statement in the court's decision:

"These other men [referring to appellants] are law violators, admitted to be such; there isn't any question about it. They were desirous of protecting the operation of their slot machines in the county; the evidence establishes that to my mind beyond all question of doubt. They are guilty of confederating together with that end in view. If any of them did not have that end in view at the start, the evidence establishes they immediately took that position, for they proceeded to collect dues on the basis of slot machines that they owned. The evidence is undisputed as to that. The evidence is undisputed that they reimbursed this man Manhardt for the loss of a machine he sustained, and that they agreed with one another that they would not interfere with the locations that they had, or they wouldn't cut prices. I take it that these things constitute overt acts in carrying out the purposes of their organization."

The appellants also make the same contention that was made in the case of *Liskowitz v. State, ante,* p. 636, 282 N. W. 103, in respect to the proper venue for the trial of this action in view of the division of Waukesha county into two districts with separate municipal courts having jurisdiction in criminal actions of this nature. That contention cannot be sustained for the reasons stated in the *Liskowitz Case.*

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on January 10, 1939.